IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NEXUS SPINE, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> ACUITY SURGICAL DEVICES, LLC, a Texas limited liability company, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS** <br><br> Case No. 2:24-cv-00658-RJS-JCB <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Jared C. Bennett |

Now before the court is Defendant Acuity Surgical Devices, LLC's (Acuity) Motion to Dismiss for lack of personal jurisdiction.[1]  Plaintiff Nexus Spine, LLC (Nexus) opposes the Motion but separately moves the court to order jurisdictional discovery in the event the court is inclined to grant it.[2]  For the reasons explained below, the court GRANTS Acuity's Motion to Dismiss and DENIES Nexus' Motion for Jurisdictional Discovery.[3]

## BACKGROUND[4]

Nexus is a Utah company that designs, manufactures, and sells medical products and devices, including a line of spinal implants.[5]  In connection with these products, Nexus has established common law and federally registered trademark and trade name rights associated

---

[1] Dkt. 14, *Defendant's Motion and Memorandum to Dismiss Complaint for Lack of Jurisdiction* (*Motion to Dismiss*).

[2] Dkt. 16, *Plaintiff's Motion for Leave, in the Alternative, To Conduct Discovery Limited To the Issue of Personal Jurisdiction* (*Motion for Jurisdictional Discovery*).

[3] Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary for this motion and will decide it on the papers.

[4] These facts are drawn from Plaintiff Nexus Spine's Complaint and related declarations and exhibits.  Acuity raises several evidentiary objections related to these exhibits, but for reasons explained below, the court need not decide them.

[5] Dkt. 2, *Complaint for Trademark Infringement* (*Complaint*) ¶¶ 1, 8.

with the root word "STABLE."[6]  The United States Patent and Trademark Office has issued

registrations on the Principal Register on behalf of Nexus for three distinct spinal implant

products: STABLE-C® (registered in July 2021), STABLENEC® (registered in February 2024),

and STABLE-L® (registered in July 2024).[7]

Acuity is a Texas company that sells spinal implant solutions.[8]  Nexus alleges Acuity

advertised "confusingly similar variations of Plaintiff's STABLE" products on its website

beginning in October 2023, first with an implant Acuity termed "Stabil NF," and later calling the

product "Stabilis NF" once Nexus explicitly informed Acuity of its trademark rights in the root

STABLE.[9]

Acuity "has no offices in Utah," "has no customers or affiliates in Utah," "has never had

a sale of a single product in the state of Utah (using STABILIS or under any other name)," "does

not pay taxes in Utah," and "has no employees in Utah."[10]  Nonetheless, evidence suggests

Acuity touts itself as having a "footprint that covers the entire United States" in the field of

spinal implant solutions.[11]  Furthermore, in July 2024, Acuity participated in the "2nd Annual

Summer Spine Symposium" in Park City, Utah (Park City Spine Symposium), which was open

to "all practicing spine surgeons and fellows."[12]  Specifically, Acuity "sponsored" a "technology

workshop" at the Symposium.[13]  From 2021 through at least 2023, Acuity also attended an

---

[6] *Id*. ¶ 9.

[7] *Id*. ¶ 10.

[8] *Id*. ¶ 2; Dkt. 14-1, *Declaration of Bryan Cowan* (*Cowan Declaration*) ¶ 2.

[9] *Complaint* ¶ 19.

[10] *Cowan Declaration* ¶ 5.

[11] Dkt. 15-6, *Acuity Surgical Press Release* at 2.

[12] Dkt 15-9, *2024 Summer Spine Symposium Print-out* at 2, 4.

[13] *Id*. at 6.

exhibition (not in Utah) sponsored by the North American Spine Society—"the premier meeting in spine" and "the world's largest spine technical exhibition"[14]— as an exhibitor.[15]  Acuity also maintains a website accessible to Utah residents and allows end-users to engage with it by submitting contact forms.[16]

Nexus initiated this suit on September 6, 2024, asserting the following claims: 1) declaratory judgment regarding its Senior Rights in the STABLE trade name and Defendant's lack of rights in the STABILIS name; 2) trademark infringement under 15 U.S.C. § 1114; 3) trademark infringement / false designation of origin under 15 U.S.C. § 1125(a); 4) common law trademark infringement; 5) common law unfair competition, deceptive advertising, and unfair trade practices; 6) unjust enrichment; and 7) unfair competition under Utah Code Ann. § 13-5a-101 *et seq*.[17]

Acuity now moves to dismiss Nexus' Complaint under Rule 12(b)(2) for lack of personal jurisdiction.  Nexus separately moves the court to order jurisdictional discovery.  These Motions are fully briefed and ripe for review.[18]

---

[14] Dkt. 15-1, *North American Spine Society 40th Anniversary Print-out* at 2.

[15] *See* Dkts. 15-2, 15-3, 15-4, 15-5, *North American Spine Society Materials*.

[16] Dkt. 15-10, *Acuity Surgical Website* at 3–5.

[17] *Complaint* ¶¶ 40–96.

[18] Dkt. 14, *Motion to Dismiss*; Dkt. 15, *Plaintiff's Memorandum in Opposition to Defendant's Motion and Memorandum to Dismiss Complaint for Lack of Jurisdiction* (*Opposition to Motion to Dismiss*); Dkt. 20, *Defendant's Reply Memorandum in Support of Motion to Dismiss Complaint for Lack of Jurisdiction* (*Reply in Support of Motion to Dismiss*); Dkt. 22, *Plaintiff's Response to Defendant's Evidentiary Objections Re: Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Complaint for Lack of Jurisdiction* (*Sur-Reply in Opposition to Motion to Dismiss*); Dkt. 16, *Motion for Jurisdictional Discovery*; Dkt. 21, *Defendant's Memorandum in Opposition to Alternative Motion for Jurisdictional Discovery* (*Opposition to Jurisdictional Discovery*); Dkt. 23, *Plaintiff's Reply in Further Support of Motion for Leave, in the Alternative, to Conduct Jurisdictional Discovery Limited to the Issue of Personal Jurisdiction* (*Reply in Support of Jurisdictional Discovery*).

## LEGAL STANDARDS

A plaintiff opposing a Rule 12(b)(2) motion to dismiss bears the burden to establish the exercise of jurisdiction comports with the long-arm statute of the forum state and constitutional due process.[19]  When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing."[20]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[21]  But "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[22]

Because Utah's long-arm statute extends the jurisdictional reach of Utah courts to non-residents to the fullest extent permitted by the U.S. Constitution,[23] the traditional two-step jurisdictional analysis effectively collapses into a single constitutional inquiry.[24]  And it is well established the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[25]  Thus, for a court to have specific personal jurisdiction over a nonresident

---

[19] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

[20] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citation omitted).

[21] *Id.* (citation omitted).

[22] *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

[23] *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 950–51 (Utah 2008) (quoting Utah Code § 78B-3-201(3)).

[24] *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[25] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

defendant, a plaintiff must show there are minimum contacts between the defendant and the forum state.[26]

Minimum contacts exist "if the defendant has 'purposefully directed' his activities at residents of the forum" state, and the alleged injuries "arise out of or are related to" those activities.[27]  A defendant's activities are "purposefully directed" at residents of the forum state if (1) the defendant has continuing relationships with the forum state; (2) the defendant deliberately exploited the forum state market; or (3) the defendant's actions caused harmful effects in the forum state (the Harmful Effects Test).[28]  Under the Harmful Effects Test, the court must find the defendant engaged in intentional action expressly aimed at the forum state with knowledge that the brunt of the injury would be felt there.[29]

## ANALYSIS

Acuity contends this court cannot exercise jurisdiction over it because it has no meaningful touchpoints in Utah.[30]  Acuity further argues Nexus' evidentiary exhibits appended to its briefing related to Acuity's Motion are inadmissible under the Federal Rules of Evidence and asks the court to disregard them.[31]  Nexus, on the other hand, contends Acuity's evidentiary objections are not well taken and inapt at this stage of the proceedings.[32]  Nexus also argues Acuity's self-touted nationwide presence, interactive website, and sponsorship of a workshop at

---

[26] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  Nexus "maintains that Acuity is subject to general jurisdiction given its self-proclaimed nationwide footprint and presence" but focuses on specific personal jurisdiction in its brief. *See Opposition to Motion to Dismiss* at 9 n.24.

[27] *Burger King Corp.*, 471 U.S. at 472 (citations omitted).

[28] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017).

[29] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

[30] *See generally*, *Motion to Dismiss* and *Cowan Declaration*.

[31] *Reply* at 1–2.

[32] *See generally*, *Sur-Reply in Opposition to Motion to Dismiss*.

the Park City Spine Symposium allow this court to properly exercise jurisdiction over Acuity.[33]

In the alternative, Nexus seeks to conduct limited jurisdictional discovery so it can make a more

complete showing on Acuity's contacts within Utah.[34]  Acuity opposes jurisdictional discovery,

arguing that Nexus "has not produced any credible and admissible evidence supporting

jurisdiction."[35]

The court agrees with Acuity that the adduced evidence does not show Acuity

purposefully directed activity at Utah.  Furthermore, the court finds it cannot order jurisdictional

discovery because Nexus has not shown with reasonable particularity that Acuity may have

purposefully availed itself of Utah-based contacts.  The court need not opine on Acuity's

evidentiary objections because Nexus' evidence—even if fully considered and viewed in the

light most favorable to Nexus—does not allow this court to exercise personal jurisdiction over

Acuity or to mandate jurisdictional discovery.[36]

### I.    Nexus Fails to Demonstrate that Acuity Purposefully Directed Activity Toward Utah.

Nexus broadly relies on three types of evidence to establish this court's jurisdiction over

Acuity.  First, Nexus demonstrates that Acuity holds itself out to have a nationwide presence,

which Nexus offers as proof that Acuity intended to exploit Utah's market and develop

---

[33] *See generally*, *Opposition to Motion to Dismiss*.

[34] *See generally*, *Motion for Jurisdictional Discovery*.

[35] *Opposition to Jurisdictional Discovery* at 2.

[36] Although courts vary widely in the extent to which they apply the Federal Rules of Evidence to evidentiary material adduced in the context of a Rule 12(b)(2) motion, *see Philips Med. Sys. (Cleveland), Inc. v. Buan*, Case No. 19-cv-2648, 2021 WL 83736, at *3 (N.D. Ill. Jan. 11, 2021) (collecting cases), the district courts in this circuit that have opined on the issue concluded that all of the standards for admissibility need not be met at this stage.  *See Escano v. RCI LLC*, No. 22-cv-360-DHU-GJF, 2022 WL 17251273, at *11 (D.N.M. Nov. 28, 2022), *report and recommendation adopted*, No. 22-cv-00360-DHU-GJF, 2023 WL 34525 (D.N.M. Jan. 4, 2023) and *Syntroleum Corp. v. Fletcher Int'l, Ltd.*, Case No. 08-cv-384-JHP-FHM, 2008 WL 4936503, at *8 (N.D. Okla. Nov. 17, 2008).

continuing relationships with Utah-based contacts,[37] and also to show that Nexus should have

foreseen that its spinal implants would "ma[ke] its way" into Utah.[38]  Second, Nexus provides

evidence that Acuity sponsored a technology workshop at the Park City Spine Symposium,

which was attended by practicing spine surgeons and fellows from Utah and elsewhere, and

through which Nexus contends Acuity developed a distribution network in the Utah market for

its infringing products.[39]  Third, Nexus contends Acuity boasts an interactive website that seeks

to engage and transact business with end users based in Utah.[40]

The law requires the court to accept as true Nexus' uncontroverted evidence of Acuity's

Utah-based contacts, and it must draw all reasonable inferences in Nexus' favor where Acuity

presents contradictory evidence.[41]  Here, Acuity does not contest that it touts a nationwide

footprint, sponsored a workshop at the Park City Spine Symposium, or generally engages

consumers through its website.  Rather, Acuity maintains none of these facts are sufficient to

establish personal jurisdiction because it "has never had a single sale in the State of Utah, has

never had property or employees in Utah, and has never offered product for sale via its

website."[42]

Accordingly, the question before the court is whether Nexus' uncontroverted evidence is

sufficient for this court to exercise jurisdiction over Acuity.  In the Tenth Circuit, there are three

ways a defendant "purposefully direct[s]" activity toward a forum state: (1) the defendant has

---

[37] *Opposition to Motion to Dismiss* at 9–14.

[38] *Sur-Reply in Opposition to Motion to Dismiss* at 10 n.9 (citing *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).

[39] *Id*. at 7 n.6; *Opposition to Motion to Dismiss* at 10–14.

[40] *Opposition to Motion to Dismiss* at 12–14.

[41] *Shrader*, 633 F.3d at 1239 (citation omitted); *Behagen*, 744 F.2d at 733.

[42] *Id*. at 2.

continuing relationships with the forum state; (2) the defendant deliberately exploited the forum

state market; or (3) the defendant's actions caused harmful effects in the forum state.[43]  Nexus

believes it offered sufficient evidence of Acuity's contacts to satisfy all three tests.[44]  The court

disagrees.

### A. Continuing Relationships

Nexus has not demonstrated any evidence of ongoing relationships between Acuity and

Utah-based residents—only conjecture that Acuity may have developed important Utah-based

contacts at the Park City Spine Symposium, and that those potential contacts "could" recommend

Acuity's products or facilitate their distribution.[45]  This conjecture—which is not alleged in

Nexus' Complaint nor supported by declarations of affidavits[46]—even if accepted as true, falls

well short how courts typically adjudicate the "continuing relationships" test outlined in the

Tenth Circuit.  The test considers whether a defendant has long-term, concrete business or legal

relationships with forum-state contacts, whether the defendant has "direct communications" with

them, and whether there is some evidence that the defendant deliberately sought out such

contacts.[47]  Here, the evidence does not show the Park City Spine Symposium precipitated any

---

[43] *Old Republic*, 877 F.3d at 904.

[44] *Opposition to Motion to Dismiss* at 9–17.

[45] *Id*. at 9–12; *see also Sur-Reply in Opposition to Motion to Dismiss* at 7 n.6.

[46] Nexus argues that its Complaint adequately alleged "that Acuity intended to and did use the Park City, Utah symposium to develop relationships with spine surgeons in Utah for the purpose of developing a distribution network in the Utah market while simultaneously infringing Nexus' established trademark rights."  *See Sur-Reply in Opposition to Motion to Dismiss* at 7 n.6.  As support, however, Nexus only cites to its *Opposition to Motion to Dismiss* at 11–12, not the Complaint.  Nexus does not make any allegation in its Complaint about the Park City Spine Symposium or how the Symposium relates to the trademarks at issue.

[47] *Old Republic*, 877 F.3d at 910–14 ("[The Record] fails to show that [Defendant] specifically sought to do business, negotiated a contract envisioning significant and long-term obligations, or conducted frequent and regular communications with [the Forum State Contact].").

ongoing relationships between Acuity and Utah residents, let alone meaningful ones that relate to Nexus' claim or were borne by Acuity's deliberate actions.

### B. Exploitation of Forum State Market

Nexus also fails to offer evidence suggesting Acuity intentionally exploited the Utah market. "Factors suggesting purposeful direction based on forum state market exploitation include: (a) high sales volume and large customer base and revenues, and (b) extensive nationwide advertising or ads targeting the forum state."[48]  Here, Acuity denies making a single sale in Utah,[49] and there is no evidence suggesting Acuity's products entered Utah's stream of commerce at all, let alone in a manner that was foreseeable to Acuity.[50]  And the evidence of Acuity's advertising efforts—one press release and attendance at a handful of national spine symposiums and exhibitions—can hardly be described as "extensive."[51]  Furthermore, Acuity's website—although interactive in the sense that it allows end users to submit contact forms[52]—in no way deliberately seeks out Utah-based users in particular.[53]  After all, there is no evidence or allegation tying Acuity's website to any Utah-based commercial activity; nothing in the record suggests Acuity's website "consummated [any] transactions, made [any] deliberate or repeated contacts, [or] had [any] 'hits' on its website from Utah users."[54]

---

[48] *Old Republic*, 877 F.3d at 915 (citations omitted).

[49] *Cowan Declaration* ¶ 5.

[50] *Cf. Ainsworth*, 716 F.3d at 179 (allowing stream of commerce theory of personal jurisdiction when the defendant "reasonably could have expected" that its product would end up in the forum state).

[51] *Cf. Old Republic*, 877 F.3d at 916 (quoting *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427 (7th Cir. 2010)) ("The defendant's advertising campaign included 'many television advertisements on national networks . . . [and] extensive venue advertising and celebrity and sports sponsorships." (alteration in original)).

[52] *Acuity Surgical Website* at 3–5.

[53] *See Zing Bros., LLC v. Bevstar, LLC*, No. 2:11-cv-00337-DN, 2011 WL 4901321, at *2–3 (D. Utah Oct. 14, 2011) (relying on *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)).

[54] *Sys. Designs, Inc. v. New Customware Co.*, 248 F. Supp. 2d 1093, 1101 (D. Utah 2003).

### C. Harmful Effects Test

Finally, Nexus' adduced evidence also fails the Harmful Effects Test.  To establish personal jurisdiction based on harmful effects, the court must find the defendant engaged in intentional action expressly aimed at the forum state with knowledge that the brunt of the injury would be felt there.[55]

Nexus is a Utah company with federally-registered trademark and trade name rights associated with the root word "STABLE."[56]  This federal registry "[n]ot only [establishes] constructive notice as to the right to use the mark, it also establishes a constructive notice as to where the mark is registered."[57]  Indeed, the federal trademark registry "indicat[es] exactly which state will feel the 'effects' of the infringement."[58] As such, courts in this district have determined "trademark infringement plus 'something more' can establish jurisdiction."[59]

On these facts, the court cannot conclude there is "something more" beyond Nexus' trademark infringement claim specifically tying Acuity to Utah.  For these claims, courts in this district have found "something more" where 1) the defendants expressly concede that the alleged infringement was purposeful (albeit justified);[60] and 2) where the defendant "targeted [the forum state] for the sale" of its infringing products.[61]  Here, there is no evidence demonstrating Acuity purposefully infringed Nexus' products in Utah or targeted Utah for the sale of infringing

---

[55] *Dudnikov*, 514 F.3d at 1072.

[56] *Complaint* ¶ 9.

[57] *Sys. Designs,* 248 F. Supp. 2d at 1098.

[58] *Id*. at 1099.

[59] *Stonebrook Jewelry, LLC v. Revolution Jewelry Works, Inc.*, 687 F. Supp. 3d 1185, 1193 (D. Utah 2023) (quoting *FITn40, LLC v. Glanbia Nutritionals (Ireland) Ltd.*, No. 2:20-cv-00871-JNP-DAO, 2022 WL 79910, at *7 (D. Utah Jan. 7, 2022)).

[60] *Id.*

[61] *FITn40*, 2022 WL 79910, at *8 (implying that deliberately directing infringing products at the forum state would satisfy the "something more" test).

products.  Its only concrete Utah-based activity—once "sponsoring" a "technology workshop" at the Park City Spine Symposium and hosting a generally interactive website accessible to Utah end-users—cannot be regarded as intentional actions that were "expressly aimed at that forum state"[62] or actions that were "specifically intended to cause harm in the forum State,"[63] at least as they relate to Nexus' trademark claim.

Nexus argues Acuity attended the Park City Spine Symposium "for the purpose of developing a distribution network in the Utah market while simultaneously infringing Nexus' established trademark rights."[64]  But this statement concerning Acuity's purpose is not reflected in any allegation in Nexus' Complaint, any sworn affidavit or declaration, and it is otherwise unsupported by the Park City Spine Symposium agenda print-out appended to Nexus' Opposition to Acuity's Motion to Dismiss.[65]  The court cannot reasonably infer that Acuity deliberately directed infringing products toward Utah knowing that it would cause harm there based on the fact that it once "sponsored" a "technology workshop" at the Symposium.[66]  There is no evidence or Complaint-based allegation suggesting Acuity's participation in the Symposium related in any way to the infringing products.  In fact, the only evidence relating to Acuity's Utah-based distribution network was offered by Acuity: a sworn declaration denying that it has ever made a single sale in Utah.[67]

---

[62] *Dudnikov*, 514 F.3d at 1072.

[63] *Stonebrook Jewelry, LLC*, 687 F. Supp. 3d at 1193.

[64] *Sur-Reply in Opposition to Motion to Dismiss* at 7 n.6; *Opposition to Motion to Dismiss* at 11–12.

[65] *2024 Summer Spine Symposium Print-out*.  *See also supra* n.46 (explaining that Nexus cited to its own Opposition brief, not its Complaint, when contending that its Complaint sufficiently ties the Park City Spine Symposium to the infringing trademark).  Unlike factual allegations in a Complaint or sworn statements in a declaration or affidavit, the court is not required to accept as true arguments made by a party in its briefing because the same Rule 11 guardrails do not apply to such arguments.

[66] *2024 Summer Spine Symposium Print-out* at 6.

[67] *Cowan Declaration* ¶ 5.

Finally, Nexus also cites Acuity's participation in the North American Spine Society's yearly exhibition—which Nexus also participated in and where Nexus exhibited STABLE products—as evidence that Acuity knowingly caused harm in Utah because the Nexus exhibition sufficiently put Acuity on notice of its Utah-based trademark rights.[68]  The court accepts as true Acuity was on constructive notice of Nexus' trademark rights by virtue of the Principal Registry.[69]  However, Acuity's attendance at a major exhibition outside of Utah does not demonstrate it expressly directed infringing products toward Utah.  It does not provide the "something more" courts require to exercise personal jurisdiction on a claim for trademark infringement.[70]  Because Nexus has not shown Acuity purposefully availed itself of Utah-based contacts, the court find it cannot exercise personal jurisdiction over Acuity.

## II.    Limited Jurisdictional Discovery Is Not Warranted.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."[71]  A court abuses its discretion when it disallows discovery where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary."[72]

As the party seeking jurisdictional discovery, Nexus bears "the burden of demonstrating a legal entitlement" to such relief.[73]  And "[i]f [Nexus] presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be

---

[68] *Opposition to Motion to Dismiss* at 15–16.

[69] *Sys. Designs,* 248 F. Supp. 2d at 1098.

[70] *Stonebrook Jewelry,* 687 F. Supp. 3d at 1193 (quotation and citation omitted).

[71] *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citation omitted).

[72] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020).

[73] *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188 n.11.

sustained."[74] However, "pure speculation as to the existence of helpful facts is insufficient" to warrant a grant of jurisdictional discovery.[75]

Nexus has failed to meet its burden. Acuity provides sworn testimony that it has not made a single sale in Utah and has no physical presence in Utah,[76] and Nexus provides no evidence to the contrary. Instead, Nexus speculates about what occurred at the Park City Spine Symposium—that Acuity may have used it to develop a distribution network in Utah for its infringing products and to establish continuing relationships with Utah-based spinal surgeons.[77] But this speculation is not alleged in Nexus' Complaint and is not corroborated by the print-out of the Park City Spine Symposium agenda.[78] Moreover, the fact that Acuity attended national spine exhibitions and held itself out as having a national brand does not suggest it has Utah-based contacts relevant to Nexus' trademark claim. Nexus fails to present factual allegations suggesting with reasonable particularity the possible existence of the requisite contacts, leaving only "pure speculation" that jurisdictional discovery will yield evidence of Acuity's Utah-based contacts.[79] This is legally insufficient to satisfy its burden. Accordingly, the court declines to grant jurisdictional discovery.

---

[74] *NASDAC Grp. Mgmt. Consultancies*, No. 2:23-cv-00569, 2024 WL 5263758, at *6 (D. Utah Dec. 31, 2024) (citation omitted).

[75] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1234 (10th Cir. 2020).

[76] *Cowan Declaration* ¶ 5.

[77] *Opposition to Motion to Dismiss* at 9–12.

[78] *2024 Summer Spine Symposium Print-out* at 6.

[79] *Jolly Dental Grp.,* 946 F.3d at 1234.

## CONCLUSION

For the foregoing reasons, Acuity's Motion to Dismiss is GRANTED.[80]  Nexus' Motion

for Jurisdictional Discovery is DENIED.[81]  The Clerk of Court is directed to close the case.

SO ORDERED this 20th day of May 2025.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge

---

[80] Dkt. 14.

[81] Dkt. 16.